The next oral argument for today is United States v. Campbell. Mr. Hillis. May it please the court, counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Campbell on this appeal. Every defendant in a criminal case has a due process right to be sentenced based on accurate information. This is well established from the Tucker and Townsend line of cases in the Supreme Court and carried on through the Welch v. Lane decision, England, Corona-Gonzalez, here in this case and beyond. When the district court sentenced Mr. Campbell to 96 months imprisonment, it said that of the guns he stole, an unrecovered number were likely in the hands of felons since, quote, those are the people who buy stolen firearms. That's at appendix pages 44 and 45. The problem is the undisputed facts in this case show that the purchaser of a huge number of these firearms, some 25, was Dickie Benton, and it's undisputed that Mr. Benton was not a felon. That pretty well undercuts the district court's conclusion and shows that her determination about who buys firearms, all those purchasers being felons when you purchase firearms in cracker barrel parking lots and places that are not perhaps the traditional areas of commerce, that those must be one felon putting firearms in the hands of another. It's simply not true. This case shows that, and we know that by virtue of that, the judge's sentence ticked upwards. So this is the difficulty of unwinding the ball of string. We don't know what causes the district court to make some of the determinations that are made to cause a sentence to go up by a day, a month, a year. So the 96 months here in this case are affected by the judge's erroneous determination about who buys stolen firearms. Therefore, we believe that under the due process requirements that we have mentioned, Corrine Gonzalez in England in particular, that the remedy here has to be remand because we cannot know how this impacted the judge's sentencing determination. Why isn't it just common sense that generally it's felons who purchase illegal firearms? Well, I would have to understand how the common sense has arrived upon perhaps to dissect that, Judge, because it's not common knowledge to me because there are so many ways, so many places, avenues where firearms are sold and transferred between private individuals that a purchaser is necessarily going to be a felon. In circumstances like this. Stolen firearms. But Mr. Benton didn't know that these firearms were stolen, Judge. Yeah, not always, but it does seem like a common sense proposition that generally felons purchase stolen firearms because they can't get them legally. That may be true, but the judge here didn't make that fine determination. She said all. We know that all is not true here. It's demonstrably incorrect based on the facts of this case. And you could certainly tell from the sentencing that the judge was well aware that a chunk of these guns were purchased by a legitimate buyer. Were purchased by a legitimate buyer. But then maybe she should have said that as opposed to what she did say, which was incorrect. But if we look at the transcript as a whole, where that's acknowledged earlier. How is this a procedural error? Well, I'm not certain that one does disambiguate the other that we could say in context. In context seems to be the death knell for any claim that we ever have about the judge's incorrect statement that's demonstrable and on the record. The last thing that she says before she imposes a sentence. So if she had some inkling earlier on that some facts, some circumstances may be one way. She ultimately arrives here right before sentencing. And this is important for the due process cases that we have relied on. The judge makes specific reference to this as the fact. So that would be the problem here. Judge Scudder, I think you were poised to ask a question. Perhaps you can answer it. So I know you're going to push back on this. And what I'm interested in is how you say it. So when I read the transcript, Mr. Hillis, I think what I read Judge Pratt to be saying, and I know you're going to say, well, read the actual words, okay? But what I read her to be saying is that, look, she's very troubled. You have a convicted felon that steals 25 guns, engages in a highly suspicious transaction of then selling them to somebody in a Cracker Barrel parking lot. Eight of them have been recovered. And 17 of them are out there somewhere. And that ain't a good thing because I don't know what the 17 are being used for, but they could be being used to commit crimes. And that's what troubled her. That's the way I read the transcript. But, again, you answered the question before I can. And because of what the transcript says, I think you're right in your conclusion. Look at what the transcript says, pages 40 and 45. She doesn't say some. So what concerns me about – look, you're doing a good job of representing me, but what concerns me is that you're not saying this, but you're kind of saying read these sentencing transcripts like statutes. You know, read them like regulations. Parse them. Put them under a microscope. No, I'm not. I'm saying give faith to the judge's description of how she saw the events, and we know this best by looking at the written word. The judge could have made finer distinctions. So if you were to be the sentencing judge, perhaps, or Judge St. Eve, you would have drawn on your experience. You would have expressed things differently. But here the judge didn't parse anything out. The judge said that all of these people who make these purchases – and consider the world post-Bruin, I suppose, how many people may be thinking they have greater license to make purchases or to engage in transactions. We better know who these people are to assume that every transaction is felon to felon is just wrong. We know that as a factual matter in this case. We don't have to have judges making these imprinted on their brains determinations based on common sentencing narratives that this is how the world works. The error, if there is one, if we're going to get really literal, right, the error is there's speculation about whether the 17 missing guns or the unrecovered guns, whether they're in the Southern District of Indiana, whether they're in the Southern District of California or anywhere in between. We don't know. That's one. Right. Okay. And number two is the comment likely in the hands of other felons. You'd say that's speculative. The next sentence is really the bigger problem. Oh, these are the people who buy stolen firearms. That's right. Because that takes away the likely and it puts us in the category of all. And it doesn't mean perhaps. It means definitely. And we know, again, Dickey-Benton. Since buying a stolen firearm is itself a felony, how could any stolen firearms be bought and not be in the hands of felons? How could any stolen firearms be bought? So if I'm not a felon and I buy guns and I sell them to a person who's not a felon? You may not have been convicted yet, but you have violated the law. Buying a stolen firearm is a violation of federal law. Isn't there a scienter requirement, Judge? Pardon? Isn't there a scienter requirement? To know that it's stolen? Yes. I thought so. Perhaps I'm misremembering. I'm not sure about that. Okay. Because otherwise there seems to be a strict liability problem, and I don't think that we could say that the purchaser, if there is a scienter requirement, would have engaged in the offense. It seems like an unlikely prosecution under the circumstances. I realize I've gotten a bit ahead of myself, so I do want to circle for a moment to the standard of review, because it occurs to me the government says that the standard of review should be plain air here, and we would say no. Look at Shaw. Look at Woods. Look at the most recent decision, Wilcher, and we think that the government is just wrong on this, and we invite the court to look at its own precedent on this. I thought we made that clear in Wood. I thought you did, Judge. I did, too. I agree. This is the panel for the court on Woods, and Woods has not made its way to the U.S. attorney community for some reason. I don't know, but if it missed it, Wilcher recently came in, and before that we had Shaw. I think at Wilcher what we said in Wood we really meant. It is frustrating. We're seeing this in a lot of briefs. This is a serious point, and we meant what we said in Woods. It requires more unnecessary writing, more response, more consideration by panelists such as yourselves. You just get these hair-splitting arguments from the government that, well, Woods doesn't mean what it says. We think it does. With that, I have nothing else. All right. Mr. Clark. Colin Clark, on behalf of the United States, I'm going to say one sentence before I get to Woods. What Campbell calls rank speculation was, in fact, a reasonable statement from a judge with decades of criminal court experience and whose opinions were consistent with a broad body of public knowledge. With respect to Woods, we cited it, and I think with respect the defense has misconstrued our argument. On pages 35 and 36 of the transcript, the United States invites the district court to use its common sense and experience by pointing out that the district court is well aware of the problem of stolen guns circulating in the black market, and for that reason a harsher sentence is warranted, and we believe that that fairly put the issue on the table before the imposition of sentence. This is the argument made in every single case, and what Mr. Hillis will say in response to that is, I'm not objecting to a comment made by an assistant United States attorney in a sentencing argument. That's not the objection. The objection is to what the district court said when imposing the sentence. He said Woods applies fully to that, because as we said in that opinion, you don't have to stand up and object, and in fact that's a terrible idea, very bad idea, and that your error is preserved for appeal, and what the government has been doing in case after case after case, and I hope you take this back to your office, is say, oh, look at the argument made in the briefs, or look at the argument that was made in the sentencing 10 or 15 pages earlier. That put everybody on notice, and my response to that is on notice to do what? Stand up and interrupt the judge? Well, on page 37 of the transcript, after the United States made that argument, and prior to the imposition of sentence, the defense was offered a final comment, and I think at that point the defense had the opportunity to say, well, I don't think that the court is well aware of anything because there are no facts in the record. You may know that that precise argument was made and rejected in an opinion issue just two days ago. It really contradicts the rules of criminal procedure, which say that exceptions are not required. What you've described is an exception, and it's not required. It's really perfectly straightforward. Well, seeing as how I'm perhaps barking up the wrong tree, I'm going to— You could do a real service, okay? I mean, we don't have to be negative. You could do something very, very productive, and that is go back to your office and make sure everybody knows about our precedent in this area. Thank you, Your Honor. And with that, I'm going to move along. In reply, Campbell repeatedly argues that felons are the only ones who buy stolen firearms, and he calls this the critical issue. But I ask this court again to let's go literally what the district court said. The remainder are in the community here in the Southern District of Indiana somewhere, likely in the hands of other felons. Those are the people who buy stolen firearms because they can't purchase them legally. If felons are the only people who bought stolen firearms, then according to that logic, the guns Campbell stole would necessarily be on the hands of felons. But that is not what the district court meant. By using the term likely, she obviously meant something else, that felons are the people who buy stolen firearms, but maybe others buy stolen firearms too. Campbell's read of those lines is a fallacious interpretation. Consider another example. Had the district court said drug addicts are the people who possess drug paraphernalia, that would, of course, be an accurate statement. But it would not, the converse would not be necessarily true, that all paraphernalia possessors are drug addicts. And so to say that felons buy stolen firearms does not mean that nonfelons do not buy stolen firearms. So as a matter of logic, Mr. Hillis's argument ought to fail. How does our opinion in Moody impact your argument? I think Moody is a great case for us because the very end of Judge Barrett's, well, then, I'm sorry, then Judge Barrett's opinion mentions that it is perfectly acceptable for a district court to consider on remand whether Moody was willfully, I think the words were willfully blind to the possibility that the guns would end up in the hands of felons. So I think Moody supports us. In fact, Moody might be our best case because of that. But I give you a couple of other reasons. Moody was about a sentencing enhancement. This is not. Moody was about whether two or more guns specifically made it into felons' hands. This case is not. This case is simply about the risk of harm, which is why we cited cases like Redman and Vasquez-Barca because the risk of harm a criminal causes through his acts is an acceptable reason to aggravate or mitigate a sentence. The government had the burden of proof in Moody by preponderance of the evidence to prove that at least two guns made it into the hands of felons. That is not this case. Then Judge Barrett pointed to a chain of inferences that made the proposition not susceptible to a commonsensical analysis. This is a chain of one. The guns entered the black market. Under 18 U.S.C. 922J, if a person knows or has reason to know that a gun is stolen, then the transaction is illegal. So there is a scienter requirement, know or reason to know. That was my question. Reason to know is not the same thing as knowledge. We don't need to pursue this, however. Yes. Both are in the statute. And so because Campbell assuredly knew that the guns were stolen, the transaction is illegal, and thus the guns entered the black market. I also pointed out that Benton must have thought that the transaction was fishy, but I am not alleging that Benton had that scienter, and it's not relevant, I think, to our arguments. So I think Moody, for those reasons, is perhaps our best case. So what is good enough for error? I believe my opposing counsel in his argument talked about a case called Welch v. Lane, which, although wasn't cited, was discussed in many of the cases we did cite, and in the Kovic case that we did cite, it quotes Welch v. Lane, if memory serves, and I'm talking about 830 F. 3rd at 685, that a defendant must show grave doubt, I think that's the phrase, as to the veracity of the information. And I don't think that the defendant has shown that. In fact, he goes so far as to call the studies that we put forth as impressive. And he says, you know, I think we argued in our brief that, well, he doesn't challenge any of our factual conclusions, and he says, well, of course we do. I say we do, right here. But if debatability means anything, it means that you have to have a reasonable position when you are debating the factual inference. It means something more than just saying, nuh-uh. There is no reason why the district court could not conclude that the guns were likely to end up in the hands of felons based on her experience in common sense, because that's how the world works. And we do not ask a district court judge to forget how the world works when sentencing an individual. Moreover, this seems to be, I wouldn't say much ado about nothing, but a difficult case for Mr. Campbell on the basis that this was a below-guideline sentence by 12 months. So I don't see how there is any chance, whether we're talking about now, we would say under plain error it's a reasonable probability of a lower sentence. I'm going to guess that that's not going to be what this court says, but says that it's going to be the harmless error standard. But even under that standard, I don't see how there's any doubt that the court would have issued a lesser sentence based on the fact that he already received a below-guideline sentence, given his record and the voluminous other reasons in the case, like the fact that he was using drugs days before the sentencing hearing. And with that, I thank this court for its time. Thank you, counsel. Anything further, Mr. Hillis? Yes, not to quibble, but I called the government's citation of authority for all the ATF, the government-prepared reports, an impressive array of authority. I haven't looked at the studies themselves to see if they are themselves impressive. The bigger point is the district court didn't look at these things either. So if we're going to be district courts who are drawing conclusions from evidence, this was not evidence presented to the district court. As for whether there is grave doubt, there is grave doubt about the district court's claim that only felons buy stolen firearms, see Dickey Benton. Pages 44-45, undisputed, he's not a felon. And lastly, if we are allowed to look at what somebody really means, what somebody meant instead of what they said, that's a great day for criminal defendants in lots and lots of cases. But why should we hold judges to a lesser standard than we hold criminal defendants to? And I get about different standards of proof, but you cannot forgive every due process violation by saying that there's something that the judge meant or look in context because we're going to nibble and erode at all the protections that due process is meant to ensure. And all the cases that we're talking about where the judge talks about the wrong number of criminal convictions or the wrong number of this or that, firearms, et cetera, comes in jeopardy. Thank you. The case is taken under advisement.